

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00133-CR

_____


CORNEL G. WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 37355-B



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Dissenting Opinion by Chief Justice Morriss

O P I N I O N

A Gregg County jury found Cornel G. Williams guilty of possession of more than four grams of a controlled substance and assessed an enhanced punishment of life imprisonment. He appeals the judgment.

Williams challenges the legal and factual sufficiency of the evidence to support his conviction and the legal sufficiency of the evidence to establish that punishment was governed by Section 12.42(d) of the Texas Penal Code. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2009). Williams also contends that his trial counsel rendered ineffective assistance by failing to object to the admission of evidence concerning Williams's post-arrest silence and by erroneously arguing at trial that Williams had been on parole for eleven years when he had, in fact, been in prison. This error, according to Williams, left the jury with the impression that Williams served only two years of his previous seventy-five-year sentence. We will overrule his contentions and affirm the conviction, but reverse the sentence and remand to the trial court for a new hearing on punishment.

## I. FACTUAL BACKGROUND

Officer Brady Welch was observing the activity at a suspected drug house on the night of August 23, 2008, when he observed a black car drive up to the house. The driver exited the car, went into the house, and then left the house after three to five minutes. Welch followed the black

2

car, witnessed the driver fail to stop at a stop sign, and initiated a traffic stop. Officer Kelly Humphrey, in his own patrol car, joined Welch in the traffic stop.

The driver continued driving for a couple of blocks, then turned left and pulled over. As the vehicle turned left, Humphrey noticed that "a white object" was thrown out of the passenger-side window of the car. Humphrey searched the area and found a baggie containing what he believed to be cocaine. Humphrey noted that the baggie was dry while the surroundings were wet from a recent rain. The baggie contained a substance that was later tested and identified as 5.82 grams of cocaine base.

The driver was identified as Williams. Selena Peacock, a known prostitute, was his only passenger. Both Williams and Peacock ultimately denied ownership of the cocaine. Initially, Peacock denied ownership, then admitted ownership only to recant and again maintain that the cocaine did not belong to her.

## II. ANALYSIS

### A. Sufficiency of the Evidence

#### 1. Standards of Review

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a legal

3

sufficiency review, we must defer to the jury's ability to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In contrast to a legal sufficiency review, when conducting a factual sufficiency review, all evidence is viewed in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We are to determine if the evidence supporting the verdict, although legally sufficient, is nevertheless so weak that the verdict is clearly wrong or manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414–15. While a factual sufficiency review allows a very limited degree of "second-guessing" the jury, the review should be deferential, maintaining a high level of skepticism about the jury's verdict before a reversal can occur. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson*, 204 S.W.3d at 417.

A review of both the legal sufficiency and the factual sufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

4

theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009); *Malik*, 953 S.W.2d at 240.

To prove Williams guilty of the charged offense, it was the obligation of the State to prove that: (1) Williams; (2) intentionally or knowingly; (3) possessed; (4) a controlled substance, cocaine; (5) in an amount of four grams or more. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon Supp. 2009). To establish the possession element, the State must prove that: (1) Williams exercised control, management, custody, or care over the substance, and (2) Williams knew the matter possessed was contraband. TEX. PENAL CODE ANN. § 1.07(39) (Vernon Supp. 2009); *see Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Williams's challenge to the sufficiency of the evidence focuses on the evidence to show that he exercised control, management, or care over the substance.

### 2. Sufficiency of the Evidence to Show Possession

The State was called on to prove that Williams possessed the cocaine. Whether direct or circumstantial, the evidence must show that a defendant's connection to the drug was more than fortuitous. *Poindexter*, 153 S.W.3d at 405–06. Some recognized factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing "possession" are:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics

5

when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). The court cautioned that such considerations were just such, "not a litmus test." *Id.* It is the logical force or the degree to which the factors, separately or in combination, tend to connect the defendant to the contraband that is important to our evaluation. *See id.* at 162; *Shipp v. State*, 292 S.W.3d 251, 257 (Tex. App.—Texarkana 2009, no pet.).

Humphrey, the officer who saw the object being thrown out of the window, conceded that he did not see who threw the object. From his vantage point, Welch did not see the object being thrown at all.

It is also important that the vehicle from which the cocaine was thrown was being driven by Williams. Certainly, the location of the cocaine, inside the car before it was thrown out of the window, would suggest that Williams as the driver of the car was in close proximity to the cocaine. If Williams knew that drugs were placed in a vehicle under his control while he had sufficient time to terminate that possession, but he failed to do so, he could be a joint possessor. *See Shipp*, 292 S.W.3d at 257; *Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.) (citing *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)).

6

Although he perhaps made no determined attempt to flee from Officer Welch, Williams did make some maneuvers to delay the traffic stop, presumably to provide the opportunity for either him or the other occupant of the car to throw the cocaine out of the passenger window. The fact that the baggie of illicit drugs remained dry when found, although it was a rainy night, indicates that the baggie was only recently deposited and that it was likely the same object observed to have been thrown from Williams's car. So, his left-hand turn and delay in pulling over could indicate a consciousness of guilt, a factor to be considered in evaluating the connection between the cocaine and Williams. Yet another consideration is that shortly before the traffic stop, Williams had visited a suspected drug house, stayed there for three to five minutes, and then left the house.

Viewing the evidence in the light most favorable to the verdict and giving deference to the jury's ability to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence, we conclude that a rational trier of fact could have found the element of possession beyond a reasonable doubt. *See Laster*, 275 S.W.3d at 517; *Hooper*, 214 S.W.3d at 13. The record does show that Williams ultimately denied possession and that Humphrey could not identify who threw the cocaine out of the window. Also, Welch testified that there was no other paraphernalia found in the car. Viewing all the evidence in a neutral light, however, we cannot say the legally sufficient evidence is so weak that the jury's verdict was clearly wrong or manifestly unjust; nor can we say that the verdict was against the great weight and preponderance

7

of the conflicting evidence. *See Watson*, 204 S.W.3d at 414–15. We overrule Williams's first and second points of error.

### 3. Sufficiency of the Evidence to Prove Prior Convictions

Williams pled true to the enhancement paragraphs. The State introduced, without objection from Williams, certified copies of two prior convictions. Williams points out that the State's notice contains no allegations regarding the sequence of the convictions. The notice, he argues, contains no mention of when the offenses occurred or when the convictions became final. Williams maintains that he pled true to the State's allegations as they are, not pleading to any sequence, since the State did not include such in its notice. The evidence then, he argues, failed to establish the range of punishment.

The State has the burden of proof to show that any prior conviction used to enhance a sentence was final under the law and that the defendant was the person previously convicted of that offense. *Flowers v. State*, 220 S.W.3d 919, 922 (Tex. Crim. App. 2007). The State's obligation in this regard is to make a prima facie showing that the prior conviction used for enhancement is valid. This may be done by introducing the prior judgment and sentence. The burden then shifts to the defendant to prove that it is void and unavailable for enhancement. *Johnson v. State*, 583 S.W.2d 399, 403 (Tex. Crim. App. [Panel Op.] 1979).

If, however, a defendant pleads "true" to the enhancement paragraph, the State's burden of proof is satisfied and a defendant cannot complain on appeal that the evidence is insufficient to

8

support the enhancements.  *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981); *Lugo v. State*, 299 S.W.3d 445, 455–56 (Tex. App.—Fort Worth 2009, pet. ref'd); *Magic v. State*, 217 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Harrison v. State*, 950 S.W.2d 419, 421 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

Despite the general rule that a plea of "true" to an enhancement paragraph relieves the State of its burden to prove a prior conviction alleged for enhancement and forfeits the defendant's right to appeal the insufficiency of evidence to prove the prior conviction, there is an exception when "the record affirmatively reflects" that the enhancement is itself improper.  *See Ex parte Rich*, 194 S.W.3d 508, 513–14 (Tex. Crim. App. 2006).  To illustrate this exception, we look first to *Sanders v. State*, 785 S.W.2d 445 (Tex. App.—San Antonio 1990, no pet.), in which the San Antonio court held that a prior nonfinal conviction could not be used to enhance punishment even where the defendant had pled true to the enhancement paragraph characterizing the prior offense as final.  "[I]n the interest of justice," the *Sanders* court set aside the enhanced punishment and remanded the case to the trial court for the proper assessment of punishment.  785 S.W.2d at 448.

In similar fashion, the Houston Fourteenth court applied this exception to a case in which one of the convictions was not final in the alleged sequence that would make the conviction available for enhancement purposes.  *Mikel v. State*, 167 S.W.3d 556 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Although Mikel pled "true" at the punishment hearing, the court concluded

9

that the evidence was legally insufficient to prove the enhancement allegations and remanded the case for a new punishment hearing. *Id.* at 560.

The Texas Court of Criminal Appeals approved application of the *Sanders*/*Mikel* exception in *Rich*, 194 S.W.3d at 513–14. In *Rich*, a defendant pled "true" to enhancement allegations. *Id.* at 510. However, the record established that one of the convictions used for enhancement had been reduced to a misdemeanor. *Id.* at 511. Therefore, despite the plea of "true," the record established, as a matter of law, that the prior conviction could not be used for enhancement. *Id.* The defendant, applying for a writ of habeas corpus, was then able to challenge the sufficiency of the evidence to support enhancement despite his plea of "true." *Id.* at 513. His challenge was successful. *Id.* at 515.

Here, we have an example of the shifting of the burden of proof. Until the close of the hearing on punishment, the burden is on the State to show the existence of the prior enhancing offenses beyond a reasonable doubt. *Cartwright v. State*, 833 S.W.2d 134, 135 (Tex. Crim. App. 1992). As pointed out previously, once Williams entered his plea of "true" to the convictions upon which the enhancements were based, the State had met its burden because "generally a defendant's plea of true to an enhancement paragraph provides sufficient evidence to find the paragraph true beyond a reasonable doubt." *Lugo*, 299 S.W.3d at 455 (citing *Wilson*, 671 S.W.2d at 525). However, the State (apparently in an effort to be thorough) introduced certified copies of the two prior convictions upon which the enhancement relied. One of those bore the following

10

notation on the last page of the exhibit: "Notice of Appeal: Given." Williams takes the position that the notation rebuts the position that the record shows that the 1997 conviction for delivery of a controlled substance was shown to be final and, therefore, the evidence was legally insufficient to support the enhancement.

We review legal insufficiency challenges to issues of enhancement proof by applying the hypothetically-correct jury charge test mentioned above. *Malik*, 953 S.W.2d at 240; *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000). The applicable repeat offender enhancement statute is Section 12.42(d) of the Texas Penal Code, which mandates that if a defendant (1) is proven to have been previously convicted of a felony which is neither a state-jail felony, nor certain enumerated sexual offenses or offenses against the family, and (2) the second such felony offense occurred after the first felony offense had become final, then the punishment options are restricted to either life imprisonment or a term of not less than twenty-five years or more than ninety-nine years. TEX. PENAL CODE ANN. § 12.42(d).

A prior conviction becomes final for enhancement purposes when the appellate court issues its mandate affirming the conviction. *Beal v. State*, 91 S.W.3d 794, 795 (Tex. Crim. App. 2002). In a concurring opinion in *Beal*, Judge Keller observed regarding the sufficiency of the proof of prior convictions that "if the State's proof of the prior conviction shows on its face that the conviction was appealed, the State must put on evidence that [the] mandate has issued." *Id.* at 797

11

(Keller, J., concurring). This position was ratified by the same court in *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005).

*Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App. 2007) is a somewhat similar case. There is a major difference, however: in it, Fletcher entered no plea of "true" to the enhancement convictions. The State introduced a penitentiary packet which included a judgment from the conviction and that same instrumentation reflected that the underlying conviction had been appealed. There was no evidence presented at the trial level to indicate that a mandate had issued after the appeal. The court of appeals purported to take judicial notice of the fact that the mandate had, indeed, issued and affirmed the judgment of the trial court. The Texas Court of Criminal Appeals observed that once the State makes a prima facie showing of an enhancement conviction and the record is silent concerning any appeal, it will be presumed to be final. It continued, however, to state that if that presumption of finality has been overcome (as there, where the penitentiary packet showed an appeal had been prosecuted), then the State must "proceed with proof of finality." *Id.* Because there was no proof that a mandate had issued in the appeal, the evidence was legally insufficient to prove the finality of the conviction upon which the enhancement was based.

Here, both the plea of "true" and the documentary evidence before the trial court showed that there had been a conviction of the nature which would support the enhancements prescribed by statute. However, the documentary evidence revealed that an appeal had been prosecuted

12

from one of those convictions, yet there was no evidence presented to show that the conviction had become final. As a result, the evidence was not legally sufficient to sustain the enhancement.

Due to the failure of the State to prove the finality of the conviction upon which enhancement was based, the proper remedy is to reverse and remand to determine proper punishment.[1] TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp. 2009).

**B.      Ineffective Assistance of Counsel**

Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). An appellant claiming ineffective assistance bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

We determine whether Williams's trial counsel rendered ineffective assistance by employing the two-pronged test handed down by the United States Supreme Court. *See Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, if either prong of the *Strickland* test fails, we need not examine the other. *See Strickland*, 466 U.S. at 697.

---

[1]When a reviewing court determines that the State's evidence fails to show that an enhancement allegation is true, the Double Jeopardy Clause does not bar the use of the enhancement conviction during a retrial on punishment; no harm analysis is required. *Jordan v. State*, 256 S.W.3d 286, 292 n.39 (Tex. Crim. App. 2008) (citing *Monge v. California*, 524 U.S. 721, 734 (1998)).

First, Williams must show that trial counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Strickland*, 466 U.S. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered to have been prompted by sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). Therefore, absent contrary evidence, we will not second-guess trial counsel's strategy through hindsight. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

Here, since the record is silent as to why trial counsel failed to object to this testimony, we will assume it was due to any strategic motivation that can be imagined. *See Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd). To meet the second prong of the *Strickland* test, Williams must show that the deficient performance damaged his defense to such a degree that there is a reasonable probability that the result of the trial would have been different had it not occurred. *See Strickland*, 466 U.S. at 694. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

### 1. Failure to Object to Testimony

Williams complains of trial counsel's failure to object during the following testimony during the State's redirect examination of the arresting officer:

> Q. Officer Welch, when you stopped the vehicle, how many people were in it?
>
> A. Two.
>
> Q. Driver's seat, passenger seat?
>
> A. Correct.
>
> Q. During the search of the vehicle, did you find anybody hiding in the trunk?
>
> A. No, sir.
>
> Q. Anybody hiding in the backseat?
>
> A. No, sir.
>
> Q. Glove compartment?
>
> A. No, sir.
>
> Q. Two people in the car?
>
> A. Correct.
>
> Q. Did you give both of those individuals an opportunity to make a statement?
>
> A. I did.
>
> Q. Did either one of them avail themselves of that opportunity?

A. No, sir.

Q. In fact, both of them denied it; is that correct?

A. That's correct.

Q. Are you familiar with the individual known as the crack fairy?

A. I can't say that I am.

Q. So if two people are in the car, and there's no crack fairy, it's reasonable that it's going to be in one of their possessions; is that correct?

A. That's correct.

Q. And if both of those individuals deny knowledge of those drugs, both of them are going to jail; is that correct?

A. That's correct.

He characterizes the failure as a failure to object to testimony concerning Williams's post-arrest silence.

We disagree with such characterization as it pertains to this excerpt of testimony. In this exchange, the State elicited testimony from Welch that Williams denied possession of the drugs and failed to make a statement to the effect that the drugs belonged to his passenger. Trial counsel neither had a reasonable basis to lodge an objection to testimony that Williams denied possession of the cocaine nor would Williams have been served by trial counsel's objection to the failure to implicate his passenger; such testimony could be read to support Williams's position that he did not know about the cocaine. Had he stated to the effect that he knew that the cocaine belonged to

16

his passenger, he would have necessarily admitted that he knew of its existence in the car, thereby possibly implicating himself. That said, the cited testimony, arguably, favors Williams's defense by showing that he denied possession and did not make a statement that he knew that the cocaine had come from his automobile.

Again, in the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia*, 57 S.W.3d at 440. We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.*; *see Thompson*, 9 S.W.3d at 813.

### 2. Misstatement of Jail Time Served

Williams also complains about the following statement from trial counsel during closing argument to the jury: "The only thing a person really has to live for is some kind of hope that they can change their life around. He did for 11 years before the cocaine got him again." More specifically, Williams complains that his trial counsel's remarks invited the following argument from the State: "If he's been out for 11 years, he didn't serve 2 on a 75-year sentence; not 2 before he got out. [Defense counsel] says that [Williams] avoided the habit for 11 years. Passed parole, passed his drug test. Where's that evidence at?" The State continued in an apparent attempt to redirect the jury: "What lawyers say is not evidence. And that's why I'm telling you,

17

look at those numbers yourself. I'm pointing it out to you, but you need to go back there and do the math on your own."

The State concedes that trial counsel's initial argument invites the inference that he had been out of prison and behaving himself for eleven years. Indeed, an earlier statement in his argument suggests that trial counsel was mistaken: "What you didn't hear is that he's been out for 11 years doing well, supporting his family, supporting his kids, that he was obviously on parole and he was passing drug tests." Recognizing the misunderstanding, trial counsel made a record concerning this statement in which he concedes that the statement was erroneous and took "full responsibility" for it:

> Q. [By Defense Counsel] And further, for the purpose of this record, there was confusion between you and I about years spent in the penitentiary, for years that you were on parole, is that right?
>
> A. [By Williams] Yes, sir.
>
> Q. And I indicated to the jury that you were on parole for 11 years; is that right?
>
> A. Yes, sir.
>
> Q. And in effect, you were in the penitentiary those 11 years?
>
> A. Yes, sir, I was.
>
> Q. So that was a mistake that I told the jury, and of course, you heard the prosecutor pick up on and use; is that right?
>
> A. Yes, sir.

Q.      And as your attorney, I'm accepting full responsibility for that mistake; you understand that?

A.      Yes, sir, I do.

Consistent with trial counsel's own characterization of the statement as "a mistake," we can imagine no strategic or tactical motivation that would justify trial counsel's suggestion that Williams served only two years of a seventy-five-year sentence. We do, though, recognize that the misstatement about being on parole is not the only import of this argument. Nor does one necessarily jump to the conclusion, from that statement, that Williams only served two years on an earlier seventy-five-year sentence. Indeed, his argument, though inaccurate, appears to be an attempt to garner sympathy from the jury and gain recognition that Williams did stay away from cocaine for some years, a reasonable strategy at trial. The State did, however, lead the jury to the conclusion that if defense counsel's statement were true, Williams served minimal time on a rather hefty sentence.

While trial counsel acknowledged his mistake, nothing in the record suggests the jury considered the mistake in arriving at the sentence. *See Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004). To the contrary, the State, though it did seize on the misstatement initially, pointed out to the jury that a lawyer's argument is not evidence and cautioned the jury to examine the dates on its own. In light of these clarifications and the fact that the jury had the proper relevant dates of convictions, we conclude that the record fails to establish a reasonable probability that, but for trial counsel's error, the result of the punishment proceeding would have been

19

different, and we will not speculate to reach such a result.  *See Stewart v. State*, 293 S.W.3d 853,

864 (Tex. App.—Texarkana 2009, pet. ref'd).   We overrule this contention of error.

## III.    CONCLUSION

Having sustained Williams's claim regarding the sufficiency of the evidence regarding the

enhancement, but overruling his other points, we affirm the trial court's judgment of conviction,

but remand to the trial court for a new punishment hearing.



Bailey C. Moseley
Justice


DISSENTING OPINION

I believe that the mere notation in the record that a notice of appeal was given, on a prior

conviction used for enhancement purposes, does not affirmatively reflect that such conviction has

not become final.   Therefore, I would affirm the judgment of the trial court in all respects.

> Despite the general rule that a plea of true to an enhancement paragraph relieves the
> State of its burden to prove a prior conviction alleged for enhancement and forfeits
> the defendant's right to appeal the insufficiency of evidence to prove the prior
> conviction, there is an exception when "the record affirmatively reflects" that the
> enhancement is itself improper.

20

*Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006).   Here, the record reflected only that a notice of appeal had been given and did not provide any other information with regard to the subsequent development of that appeal after the notice of appeal had been given.

In each of the cited cases in which enhancements were held improper in spite of a plea of "true" to the enhancement allegations, the record affirmatively demonstrated, in one way or another, that the conviction used for enhancement purposes did not qualify for such use, that is, it was either not a felony, was not properly sequenced, or was not final.   *See id.* (prior "felony" conviction affirmatively shown to have been reduced to misdemeanor); *Mikel v. State*, 167 S.W.3d 556, 558–59 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("later" sequenced prior offense shown on face of record to have occurred before "earlier" prior offense); *Sanders v. State*, 785 S.W.2d 445, 448 (Tex. App.—San Antonio 1990, no pet.) (record affirmatively showed that prior "final" felony was, at time of enhancement, suspended).

Here, all the record shows is that a notice of appeal was given; it says nothing about what happened after that notice of appeal was given.   Thus, I believe, the record does not "affirmatively reflect" that the plea of "true" was untrue, and the sentence should stand as enhanced.

I respectfully dissent.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 10, 2010
Date Decided:       March 31, 2010

Publish