**AFFIRMED and Opinion Filed September 21, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00057-CR

### LESLIE ROBERT SCHULZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-83859-2018**

## MEMORANDUM OPINION

Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Goldstein

Leslie Robert Schulz appeals his conviction for driving while intoxicated (DWI) 3rd offense or more, based upon two prior misdemeanor DWI convictions, a third-degree felony offense.[1]    Schulz pled "not guilty" to the charged offense and did not stipulate to the prior DWI related offenses. A jury found Schulz guilty of DWI 3rd and the trial court assessed punishment pursuant to the parties' agreement to suspend the ten-year prison sentence, placing Schulz on probation for five years. Schulz presents two issues on appeal, first contending the trial court erred by

---

[1] TEX. PENAL CODE ANN. § 49.09(b)(2).

refusing to quash a Florida conviction used as a jurisdictional enhancement, and next contending the trial court erred by refusing to suppress the results of Schulz's blood-alcohol test. We affirm the trial court's judgment.

## I.    Factual Background

Lavon Police Officer Flohr made a traffic stop based upon radar showing Schulz's motorcycle traveling 70 miles per hour in a 50 miles per hour zone. Schulz admitted he was returning home from a bar and gave inconsistent answers as to the number of drinks he consumed and whether he was at the bar with friends or alone. Officer Flohr, observing signs of Schulz's intoxication—slow, slurred speech, heavy eyes, balance issues, the smell of alcohol, and an inability to focus—called for backup. Schulz refused to perform standardized field sobriety tests (SFSTs). Sargent Aaron arrived as backup, observed signs of Schulz's intoxication, and sought his consent to a breath test and SFSTs. Schulz, stating he was nervous, refused both. Officer Flohr arrested Schulz for driving while intoxicated, determining Schulz lacked normal use of his mental or physical faculties.

Upon arrest, Schulz was handcuffed, searched, placed in the back of Officer Flohr's patrol car, read his DIC-24 statutory warnings and provided a copy. Officer Flohr's bodycam video reflected the request for a blood specimen and Schulz's response "Okay, you can take my blood." Officer Flohr verified "So you're giving permission to consent for us to take your blood?" and Schulz replied "Yes." Prior to taking Schulz to a hospital, Officer Flohr asked Schulz a third time "you still

–2–

consent to taking your blood?" and he said "yes." Schulz's blood was drawn by a registered nurse, placed into evidence and tested. Schulz's blood alcohol concentration was .221, which is two- and one-half times over the .08 legal limit.

Two prior misdemeanor DWIs were offered as jurisdictional enhancements, one from Collin County, Texas in 2012 and one from Lee County, Florida in 2014. Defense counsel objected that the Florida conviction was insufficient under Texas law to support a jurisdictional enhancement and moved to quash the Florida enhancement allegation in Schulz's indictment. The trial court overruled counsel's objections and denied the motion to quash.

## II.    Motion to Quash Jurisdictional Enhancement

In Issue One, Schulz contends the trial court erred in denying his motion to quash the portion of his indictment alleging a prior Florida conviction as a jurisdictional enhancement. The sufficiency of an indictment is a question of law that is reviewed *de novo* unless the resolution of the question of law turns on an evaluation of the credibility or demeanor of witnesses. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

Schulz collaterally attacks the Florida conviction as void because of the record's failure to reflect that he waived his right to a jury trial. A prior conviction that was alleged for enhancement may be collaterally attacked if it is void or if it is tainted by a constitutional defect. *Galloway v. State*, 578 S.W.2d 142, 143 (Tex. Crim. App. 1979). Lesser infirmities in a prior conviction, such as irregularities in

–3–

the judgment or sentence, may not be raised by a collateral attack, even if they would have resulted in a reversal had they been presented on appeal. *Id.*

### A.    State's Burden:  Prima Facie Showing

A DWI offense may be enhanced to a third-degree felony if the State proves that the person has two prior convictions for certain DWI offenses.  TEX. PENAL CODE ANN. § 49.09(b)(2). An offense relating to the operation of a motor vehicle while intoxicated includes an offense under the laws of another state that prohibit the operation of a motor vehicle while intoxicated. *Id.* § 49.09(c)(1)(F).  The prior convictions are jurisdictional allegations that define the offense and are essential elements of felony DWI that must be plead and proven at the guilt-innocence phase of trial. *See* TEX. PENAL CODE ANN. § 49.09(b); TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1); *State v. Duke*, 59 S.W.3d 789, 790 (Tex. App.—Fort Worth 2001, pet. ref'd) (op. on reh'g).

Schulz did not plead "true" to the jurisdictional enhancements or stipulate to the prior convictions.  Where a defendant has not pled "true" to an enhancement allegation, the State must prove the enhancement allegation beyond a reasonable doubt. *Wood v. State*, 486 S.W.3d 583, 588 (Tex. Crim. App. 2016) (holding State cannot solely rely upon presumption of regularity applied to judgment recital of "true" plea to an enhancement allegation, finding State met its evidentiary burden to prove prior conviction).  To establish a prior conviction for purposes of enhancement, the State must produce evidence demonstrating the existence of a prior

–4–

conviction and the defendant's link to it. *Henry v. State*, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016) (citing *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)).

To make its prima facie showing, the State introduced, and the Court admitted over objection, State's Exhibit 8, the Florida penitentiary packet consisting of certified copies of the Florida judgment and sentence, fingerprint card, order/commitment form, first appearance court order, arrest warrant, and sheriff's alcohol influence report, all containing Schulz's name and the same case number.[2] The judgment indicates Schulz entered a plea of nolo contendere to DUI, in open court, signed by the Judge, placed on 12 months' probation, with a blank signature line acknowledging receipt of the order. The order/commitment form ("plea form") reflects Schulz was "Present by Attorney" and that a plea of nolo contendere was made "in absentia." The plea form reflects a sentence of twelve months' probation with the same conditions of probation as the judgment.

If the State provides prima facie evidence of an enhancement conviction, we presume the regularity of the judgment related to that prior conviction. *Fletcher v. State,* 214 S.W.3d 5, 8 (Tex. Crim. App. 2007); *Wise v. State*, 394 S.W.3d 594, 598 (Tex. App.—Dallas 2012, no pet.). We find the State met its evidentiary burden to

---

[2] Also referred to as a "pen packet." While not presented as a separate issue on appeal, Schulz contends the trial court erred in admitting the Florida pen packet. A trial court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We do not separately address whether the trial court abused its discretion in admitting State Exhibit 8, as our de novo standard of review of the denial of the motion to quash is more stringent.

link Schulz to the prior Florida DUI conviction, and therefore we presume the regularity of the Florida conviction for enhancement purposes. Once the State links a defendant to a prior judgment, the burden then shifts to the defendant, who must affirmatively show a defect in the judgment that would render it void. *See Wise*, 394 S.W.3d at 598; *see also Sample v. State*, 405 S.W.3d 295, 301 (Tex. App.—Fort Worth 2013, pet. ref'd); *Williams v. State*, 309 S.W.3d 124, 129 (Tex. App.—Texarkana 2010, pet. ref'd).

### B.    Burden Shifts to Schulz – Presumption of Regularity

During the punishment phase of trial, Schulz moved to quash the Florida penitentiary packet produced by the State for enhancement purposes. Schulz contends that the face of the Florida judgment contains false statements and therefore is not entitled to the presumption of regularity. Noting that neither Schulz nor his attorney signed the judgment or plea form, Schulz argues that recitals in the judgment indicating Schulz was present before the court, entered a nolo contendere plea, and was admonished that his probation may be rescinded are false, as they conflict with the plea form that reflects Schulz did not appear in person and that his plea was made in absentia. The State argues, reading the judgment and plea form together, that Schulz was present before the court through his attorney's representation, noting that Florida procedural rules allow a misdemeanor defendant to be tried in absentia at their own request, upon leave of court. *See* FLA. R. CRIM. P. 3.180(d). In addition to reflecting that Schulz made a plea in absentia and was

–6–

"Present by Attorney," the plea form contains defense counsel's name, and the same date, plea, case number, and sentence details as the judgment. The first appearance court order, recites, among others, that Schulz: 1) was to be provided a copy of the order upon release from jail, 2) lived in Texas, 3) acknowledged he had been advised of his right to be represented by an attorney and of the rights on the plea form, and 4) the conviction may be used on a subsequent felony score sheet. Similar to cases likening such evidence to pieces of a jigsaw puzzle, we find the details of Schulz's appearance and plea through counsel reflected on the plea form and other documents are pieces of the puzzle that supplement, rather than conflict, with the judgment. *Flowers*, 220 S.W.3d at 923 (although each piece alone may have little meaning, evidence is legally sufficient to prove a prior conviction when the evidence considered together forms a picture showing a defendant is the person who committed the alleged prior offense); *see also Wood*, 486 S.W.3d at 589–90. Properly considering all documents comprising State Exhibit 8 in combination, the documents show that Schulz appeared in court on April 29, 2014, through his counsel to plead nolo contendere. Accordingly, the trial court did not err in denying Schulz's motion to quash the enhancement allegation on this basis.

### C. Schulz's Burden: Collateral Attack on Jury Trial Waiver

Even if the presumption of regularity applied, which we found that it has, Schulz contends that the Florida judgment is void "because the record contains evidence that Schulz never signed a waiver of his right to a jury trial or was

admonished about it."[3]   Schulz collaterally attacks the Florida conviction as void because the record fails to reflect that he waived his right to a jury trial.  A prior conviction alleged for enhancement may be collaterally attacked if it is void or if it is tainted by a constitutional defect. *Sparks v. State*, 809 S.W.2d 773, 774 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (citing *Galloway*, 578 S.W.2d at 143).[4] Lesser infirmities in a prior conviction, such as irregularities in the judgment or sentence, may not be raised by a collateral attack, even if they would have resulted in a reversal had they been presented on appeal. *Id*.

The pen packet contained no showing that Schulz had been informed of, or waived, his right to a trial by jury.  Schulz relies on the contents of the pen packet to argue that the original Florida conviction record contains no showing of a jury waiver.

Although Schulz may lodge a collateral attack on the prior Florida conviction, as the party attacking the conviction, it is his burden to show its invalidity in the

---

[3] At the motion to quash hearing, Schulz maintained it was the State's burden to establish on the record that the defendant made an express, knowing, and intelligent waiver of a jury trial compliant with article 1.13 of the code of criminal procedure.  He argued the Florida judgment could not be presumed regular because it lacked a recitation that a jury trial was waived, arguing the *Breazeale* holding that a silent record cannot support a presumption that a defendant formally waived his right to trial by jury.  *See Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App.  1985) (op. on reh'g).  However, the *Breazeale* case involved a direct appeal and does not apply to a collateral attack on prior judgments used for enhancement purposes. *See West v. State*, 720 S.W.2d 511, 519 (Tex. Crim. App. 1986), *cert. denied*, 481 U.S. 1072 (1987).

[4] Even when a collateral attack rests on constitutional grounds, states may assign a burden of production to the defendant to overcome a silent or missing record because prior judgments retain a presumption of regularity. *See Parke v. Raley*, 506 U.S. 20, 31–32 (1992); *Alvear v. State*, 25 S.W.3d 241, 245 (Tex. App.— San Antonio 2000, no pet.) ("It is unreasonable to presume from the unavailability of a reporter's record that a defendant was not advised of his rights") (citing *Parke*, 506 U.S. at 30).

record and preserve the error for appeal. *West*, 720 S.W.2d at 519. Schulz has neither presented the court with a complete record of the prior Florida cause, nor introduced evidence that the Florida law requires a jury waiver to be reflected on the face of the judgment. *West*, 720 S.W.2d at 519. Reliance on the Florida penitentiary packet alone is insufficient to carry Schulz's burden of proof. *Sparks*, 809 S.W.2d at 774–75.

Schulz argues his defense counsel offered State Exhibit 8 to demonstrate the Florida records contained no evidence of a valid jury trial waiver, and that the State offered no additional evidence to contradict his contention. However, in a collateral attack, the absence of a written jury waiver in the court's file does not render a conviction void. *See Sample*, 405 S.W.3d at 302; *Egger v. State*, 62 S.W.3d 221, 224 (Tex. App.—San Antonio 2001, no pet.) (citing *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993)). A judgment that fails to comply with statutory requirements is not void and may serve as sufficient proof of a final conviction for enhancement purposes. *Brown v. State*, 508 S.W.3d 453, 457 (Tex. App.—Fort Worth 2015, pet. ref'd). This Court similarly has held that, "[e]ven if all procedural requirements of article 42.01 have not been met, as long as a judgment adjudicates the guilt of the defendant and assesses his punishment, it may be used under section

49.09(d) to elevate misdemeanor DWI to a felony offense." *Williamson v. State*, 46 S.W.3d 463, 466–67 (Tex. App.—Dallas 2001, no pet.).

Schulz cites Florida and Texas authority supporting the proposition that the *actual* lack of an express jury trial waiver is per se reversible error under Florida law and can render a conviction void under Texas law. A defendant collaterally attacking a prior conviction used for enhancement purposes on the ground that a jury trial was not validly waived has the burden either to show the entire record is silent on jury waiver or to introduce additional evidence that shows the right to a jury trial was not in fact waived. The Texas Court of Criminal Appeals has stated:

> The records introduced at trial, while silent on the question of jury waiver, were not shown to be the complete records of the Florida offense. The question, then, is not whether records which are silent upon the question of jury waiver can support a conviction, but whose burden it is to show whether the records are indeed silent in a collateral attack such as the one at bar. We hold that in this instance, as in other collateral attacks, that burden is upon the party attacking the validity of the conviction.

*West*, 720 S.W.3d at 519; s*ee also Sample*, 405 S.W.3d at 301 (defendant's testimony did not overcome judgment's recital of jury trial waiver); *Tate v. State*, 120 S.W.3d 886, 890 (Tex. App.—Fort Worth 2003, no pet.) (defendant failed to introduce entire record from prior conviction or evidence of actual jury trial waiver).

Because the records in State Exhibit 8 are silent on the issue of jury waiver, it was Schulz's burden to establish the Florida conviction was void by producing evidence that demonstrates the pen packet contained the complete record of his

Florida conviction or that he in fact never made an express, knowing, and intelligent waiver of a jury trial. Schulz did not introduce the Florida reporter's record or any evidence showing that the pen packet was the complete record of his Florida conviction, nor did he offer testimony when the trial court heard his motion to quash.

Schulz urges this Court to consider testimony he offered *after* the trial court denied his motion to quash, overruled his objections to including the Florida conviction in the jury charge, and dismissed the jury to deliberate.[5] Schulz testified that he never signed a document waiving a jury trial and he never authorized an attorney to give up his right to a jury trial. An appellate court's review of the record generally is limited to the evidence that was before the trial court at the time of the trial court's ruling. *Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007). Even if Schulz's testimony had been offered when the trial court was considering his motion to quash, the court was not required to accept it as conclusive proof there was no voluntary waiver of his right to trial by jury. A defendant's self-serving testimony alone is insufficient to carry the burden on collateral attack. *See Egger*, 62 S.W.3d at 224–25 (finding production of entire file proving no written jury

---

[5] We note that the purpose of Schulz's testimony is not delineated on the record. Schulz testified that he was in Florida for two weeks in December 2012 and was arrested for DUI, whereupon he posted bond and returned to Texas. Schulz admits the fingerprint card contains his fingerprints and his signature, that he was represented by the Florida attorney named on the plea form who took his plea in absentia, and that as a result he was given probation. Schulz did not testify that he would have demanded a jury trial if he had been advised it was available. The State argues that Schulz's appearance in absentia through his retained counsel, his plea of nolo contendere, and his negotiated sentence all militate against Schulz's testimony that his attorney never advised him of his right to a jury trial. We agree.

waiver and defendant's testimony was insufficient to overcome judgment recital) (citing *Disheroon v. State*, 687 S.W.2d 332, 334 (Tex. Crim. App. 1985)); *Alvear*, 25 S.W.3d at 246 (bald assertions by defendant that plea was involuntary are insufficient to overcome the presumption of regularity) (citing *Parke*, 506 U.S. at 30).

Because Schulz failed to meet his burden of proving that State's Exhibit 8 contained the entire Florida record or that he in fact never waived a jury trial, Schulz failed to prove his Florida conviction was void. Accordingly, we find the trial court did not err in admitting State Exhibit 8 or in denying Schulz's motion to quash the enhancement allegation. Issue One is overruled.

## III. Motion to Suppress Blood Test Results

In his second issue, Schulz contends the trial court erred in denying his motion to suppress blood-alcohol test results because he did not separately consent to the testing of his blood specimen. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). We give almost total deference to the trial court's determination of historical facts and review *de novo* the application of the law to the facts. *Id.* We view the record in the light most favorable to the trial court's ruling

and uphold the ruling if it is supported by the record and is correct under any theory of the law applicable to the case. *Id.*

Schulz argues that a warrant was required to test his blood because consent given for blood to be drawn does not operate as consent for testing, as blood testing involves a discrete invasion of privacy under the Fourth Amendment. *See Martinez v. State*, 570 S.W.3d 278, 290 (Tex. Crim. App. 2019) (finding warrant was required for State to test blood obtained from hospital where consent to draw blood after traffic accident was given for medical purposes only).

The Texas Court of Criminal Appeals recently distinguished *Martinez* from cases where blood was drawn after a showing of probable cause justified a warrant, and clarified "the chemical testing of the blood, based upon a warrant that justifies the extraction of blood for that very purpose, is a reasonable search for Fourth Amendment purposes." *Crider v. State*, 607 S.W.3d 305, 307–08 (Tex. Crim. App. 2020), *cert. denied* 141 S.Ct. 1384 (2021) (citing *State v. Staton*, 599 S.W.3d 614, 617–18 (Tex. App.—Dallas 2020, pet. ref'd) (finding *Martinez* does not mandate a second warrant to test blood obtained through a warrant, stating "common sense dictates that blood drawn for a specific purpose will be analyzed for that purpose and no other.")).

Schulz's blood was tested after being drawn by consent rather than pursuant to a warrant. Officer Flohr read Schulz the standard DIC-24 statutory warnings, after which upon specific questioning, Schulz thrice verbally and unequivocally

consented to his blood being drawn. Schulz contends the focus of the DIC-24 is the taking of a blood specimen and advising of the consequences of refusing the blood draw; the warnings do not contain an additional request for consent to analyze the specimen.

The DIC-24 warns that, after consent is given for blood to be drawn, the specimen *will be analyzed* for blood-alcohol content and certain consequences will arise if the test shows an alcohol concentration of .08 or more. Schulz argues this additional warning does not create a blanket consent to other conduct by law enforcement. The State argues that Schulz's consent to the blood draw necessarily authorized the blood alcohol testing because a reasonable person could have no other understanding after hearing DIC-24 statutory warnings. *See Freeman v. State*, 413 S.W.3d 198, 203 n.1 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). ("These warnings explain among other things, some of the potential consequences of refusing or submitting to a breath or blood test.").

"Whether we say the warrant that justifies extraction of the blood also, by necessary implication, justifies chemical testing, or we simply acknowledge that a magistrate's finding of probable cause to extract the blood for chemical testing necessarily constitutes a finding of probable cause also to conduct the chemical test for intoxicants, is of no moment." *Crider*, 607 S.W.3d at 307–08. "[T]he Fourth Amendment does not require the State to obtain a second warrant to test a blood sample that was seized based on probable cause that a person was driving while

intoxicated." *Id.* at 307 (citing with approval *Jacobson v. State*, 603 S.W.3d 485, 491 (Tex. App.—Fort Worth 2020, pet. ref'd)).

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Voluntary consent to draw blood after receiving statutory DIC-24 warnings is recognized as a valid exception to the warrant requirement. *See Leal v. State*, 82 S.W.3d 84, 89 (Tex. App.—San Antonio 2002, pet. ref'd) ("Search warrants and consent-to-search forms serve the same purpose, permitting a legal search, and only differ as to the source of authority.").

Schulz does not challenge the voluntariness of, or consent to, the blood draw, just the subsequent testing. We find that Schulz's voluntary consent given for his blood to be drawn after hearing DIC-24 warnings that the specimen will be tested for alcohol and could be used in proceedings against him was sufficient authorization for the State to test the specimen without first obtaining a warrant for the testing.[6] Accordingly, we find the trial court did not err in denying Schulz's motion to

---

[6] A sister court agrees. *See Burkland v. State*, No. 14-18-00599-CR, 2020 WL 548334, at *5 (Tex. App.—Houston [14th Dist.] Feb. 4, 2020, pet. ref'd) (mem. op., not designated for publication) (where statutory warning informs of purpose of the blood draw before consent, concluding consent covered both the draw and subsequent analysis of blood).

–15–

suppress the results of his blood-alcohol test.   We overrule issue two and affirm the

trial court's judgment.


                                        /Bonnie Lee Goldstein/
                                        BONNIE LEE GOLDSTEIN
                                        JUSTICE


Do Not Publish
Tex. R. App. P. 47.2(b)
200057F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

LESLIE ROBERT SCHULZ,
Appellant

No. 05-20-00057-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-83859-
2018.
Opinion delivered by Justice
Goldstein. Justices Molberg and
Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 21st day of September, 2021.