

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00122-CR

_____


ALLEN RAY SHIPP, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22668


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# OPINION

Based on events occurring during one visit to the Wal-Mart store in Bonham, Allen Ray Shipp was charged, in three separate indictments, with possession of a controlled substance; forgery of a government instrument; and forgery of a commercial instrument. The controlled substance charge alleged Shipp possessed methamphetamine and also alleged Shipp possessed the drug within 1,000 feet of a school, which would have enhanced the punishment for that charge. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134 (Vernon Supp. 2008). The charge of forgery of a government document claimed Shipp had a false Texas driver's license. The commercial instrument charge alleged Shipp had presented a forged Wal-Mart receipt while in that store.

Shipp now challenges the sufficiency of the evidence to support these convictions; Shipp also alleges error in the trial court's order cumulating his sentences. The State moved to consolidate the three indictments and try Shipp in a single criminal action. Shipp did not object or move to sever any of the actions. A Fannin County jury found Shipp guilty of all three charges and found "true" the allegation of possession of a controlled substance in a drug-free zone. The trial court sentenced him to sixty years' imprisonment for the possession charge; twenty-five years for the forgery of a government instrument charge; and twenty years and a $10,000.00 fine for the forgery of a commercial instrument charge. The trial court originally ordered the sentences to run concurrently, but later ordered consecutive sentences. Finally, Shipp claims deprivation of due process where the

2

State was allowed to consolidate three charges into one trial, while at the same time being allowed to seek cumulation of sentences.

The instant cause number and opinion concerns Shipp's conviction for possession of a controlled substance. We refer the reader to our opinions in cause numbers 06-08-00123-CR (forgery of government instrument) and 06-08-00124-CR (forgery of commercial instrument) for our decisions addressing Shipp's appeals of those two convictions.

## I. A Trip to Wal-Mart

On August 8, 2007, Shipp went to Wal-Mart with his wife, Carol, and the couple's adult daughter, Courtney Butner. Carol had in a shopping cart a computer and a computer desk. She gave the cart and a receipt, supposedly for the items in the cart, to Allen (in some instances we refer to appellant Allen Shipp as Allen, to distinguish him from Carol; or as Shipp). She told him she was going to the bathroom, that she had paid for the items in the cart, and would meet Allen in the car. When Allen presented his cart and receipt to the store attendant located at the exit, the attendant noticed the receipt did not feel like the usual receipts she handled; on closer inspection, the store number and telephone number were incorrect. As many as five Wal-Mart employees reviewed the receipt and also found these inconsistencies. Shipp went from asking what was the delay, to acting nervous, to demanding a refund of $1,000.00; this, despite the fact the receipt showed a purchase of $730.68. It was also discovered that the stock numbers listed on the receipt did not correspond to the items in Shipp's basket. Bonham police responded to the store and began to interview Shipp.

3

Police also made contact in the parking lot with Carol and Butner. Carol said that at some point, Allen brought her the keys and instructed her and Butner to leave. They left in the car, but shortly returned to the Wal-Mart parking lot and were contacted by the police officers. Carol agreed to allow the officers to search her purse and the car, but claimed the key was locked in the car. Although she had told police she had no other keys to the car, a key was found in her purse. Officers found in the center console a small M & M's container that contained methamphetamine, along with a glass smoking pipe and small baggies used to portion narcotics. Tucked in the visor over the driver's side seat were two more receipts, much like the one Shipp had presented in the store. Those receipts, like the one Allen had in the store, also had incorrect store numbers and store telephone numbers. Those receipts listed the same items, a computer and a desk, as the receipt presented in the store. Also found in the car were a paper driver's license for Carol and a plastic driver's license for Allen. Officer Josh Walker, who conducted the search and found these licenses, testified he believed the paper license for Carol was counterfeit, and the plastic one for Allen had its corner cut off and appeared to have areas ground off. Walker said he believed the Texas Department of Public Safety cut the corner off licenses to indicate they were revoked.

The State called Carol to testify against Allen. From statements made by Carol, the State, and Allen's attorney, it appears that about two weeks before Allen's trial, Carol pled guilty to two felonies, one of which may have been for the same possession of a controlled substance for which Allen was on trial. It appears that part of her negotiated plea agreement was that she would testify

4

against Allen at his trial. From the context of some of the State's questions, it appears that she did not testify exactly as the State anticipated. She testified that a few nights before the incident at Wal-Mart, in the middle of the night, she took Allen's car without his knowledge or permission and drove to Garland, Texas, where she bought the methamphetamine eventually found in the console of Allen's car the day of the Wal-Mart arrest. She told the jury the methamphetamine found in the console of Allen's car was hers. She said she had been carrying it with her, in a small M & M's container. She said that when she, Butner, and Allen arrived at Wal-Mart, she put the container in the center console of Allen's car. As they got out of the car, she claims she told Allen, "I put my green thing in your console," where "green thing" referred to the container in which she carried her methamphetamine. Carol testified she "assumed" Allen heard her say she put her container of narcotics in his car, and "assumed" he knew what she meant about her "green thing," but she also said she had "no clue" whether Allen knew what she was talking about. Illustrative of her testimony is the following: "Well, I can't say that he knew for sure [that Carol had put her methamphetamine in the car's console], but I assumed that he knew." Carol also claimed responsibility for originating the idea to forge the store receipt. She said she made the fake receipt on Allen's computer while he was not home. She also testified that she gave him the receipt with the cart of items so that he would either successfully get the items out of the store, or get in trouble, which would repay him for things he had done to her in the past.

5

The Wal-Mart receipt led to Allen's conviction for forgery of a commercial instrument (see this Court's opinion in cause number 06-08-00124-CR); the temporary driver's license found in Allen's wallet led to his conviction for forgery of a government instrument (cause number 06-08-00123-CR). The instant opinion addresses Shipp's conviction for possession of methamphetamine and the finding that such possession was in a drug-free zone.

## II.    Possession of Controlled Substance

### A.    Standard of Review

Shipp attacks the legal and factual sufficiency of the evidence to support his conviction for possession of a controlled substance (points of error 1 and 5), and to support the jury's finding on the allegation the possession occurred in a drug-free zone (points of error 2 and 6).

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*,

204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).[1]

To prove unlawful possession of a controlled substance, the State must establish that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew that the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2003). "'Possession' means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(39) (Vernon Supp. 2008). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b) (Vernon 2003). The accused's mere presence in the same place as the controlled substance alone is not sufficient to justify a finding of possession. *Harrison v. State*, 555 S.W.2d 736, 737 (Tex. Crim. App. 1977). When the accused is not in exclusive possession of the place where contraband is found, there must be additional independent facts and circumstances which affirmatively link the person to the contraband. *Poindexter*, 153 S.W.3d at 406. "Whether this evidence is direct or circumstantial, 'it must establish, to the requisite

---

[1]Under state law, in determining both the legal and the factual sufficiency of the evidence, we measure the evidentiary sufficiency by the elements of the offense as defined by the hypothetically correct jury charge for the case. *See Vega v. State*, 267 S.W.3d 912, 915 (Tex. Crim. App. 2008); *Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008). A hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

7

level of confidence, that the accused's connection with the drug was more than just fortuitous.'" *Id.* at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). This connection is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406.

Under either sufficiency standard, it is unnecessary for the State's evidence to exclude every other possible hypothesis but that of the accused's guilt, as long as there are sufficient links to connect the accused to the crime. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995); *Benson v. State*, 240 S.W.3d 478, 482 (Tex. App.—Eastland 2007, pet. ref'd); *Harris v. State*, 133 S.W.3d 760, 764–65 (Tex. App.—Texarkana 2004, pet. ref'd). In the context of a charge of possession of controlled substance, many links to consider have been recognized:

> (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.); *Kyte v. State*,

8

944 S.W.2d 29, 31–32 (Tex. App.—Texarkana 1997, no pet.)). It is the logical force of such links, rather than mere quantity, that is important in determining whether the evidence is sufficient to connect the accused to the alleged contraband or crime. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

### B.     Evidence of Allen's Possession

The facts here reveal that Allen and Carol had been married, had children, and sporadically lived together over more than a twenty-year period. A few nights before this incident, Carol had used Allen's car to drive to Garland to obtain methamphetamine. Allen was upset that she had used his vehicle as Carol was not allowed to drive his vehicle.

The day of August 8, 2007, Carol went with Allen in his vehicle to the Wal-Mart store in Bonham. Carol had the container of drugs in her "hand" and as they left the car, she put the container of drugs in the console of Allen's vehicle and told Allen that she left her "green thing" in his car. By alluding to the "green thing," Carol was referring to the "dope." While Carol originally stated that she could "not recall" if Allen understood she was referring to the dope, she ultimately testified that she assumed he knew what she meant. During the search of the vehicle, the drugs and drug paraphernalia were found in the center console.

### C.     Legal and Factual Sufficiency Analysis

Inference stacking is not part of factual sufficiency analysis. The jury can draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial. They

9

may not come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007). In this case, the facts show that Allen and Carol had a long-time relationship, drugs were found in the vehicle owned by Allen, Carol purchased the drugs while using Allen's vehicle, and told him that she had placed the "green thing" in his car. From these facts, may a jury reasonably infer that Allen knowingly and jointly exercised care, custody, or control of the contraband?

The vehicle in which the contraband was found belonged to Allen and he had the right to control the contents placed in it. If Allen knew that drugs were placed in a vehicle that he controlled while he had sufficient time to terminate that possession, but he failed to do so, he could be a joint possessor. *See Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.) (citing *United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)). While knowledge of the presence of contraband may be inferred from control over the vehicle in which the contraband is concealed particularly if the amount of contraband is large enough to indicate the defendant knew of its presence, we do not solely rely upon the control of the vehicle, in this instance, to show knowledge. In this case, there is evidence that Carol made an effort to tell Allen of the presence of the contraband in the vehicle. The ultimate question here is whether the jury may reasonably infer that Allen had knowledge of the drugs in his car when Carol told him that she put the "green thing" in the car.

10

This question should be decided based on the evidence that the jury was considering. Before this incident at Wal-Mart in Bonham, Allen knew that a few days earlier, Carol had taken his car in the middle of the night on an excursion after which he became angry. It may be reasonably inferred that he was well aware of Carol's habits since they had been together for the better part of twenty-four years. Mere words themselves may connote no particular meaning to two persons who are unacquainted and unfamiliar with the other person and his/her manner of speech, whereas two long time, intimate friends or spouses may be able to speak in a short-hand manner to each other with complete understanding and awareness. Further, it is not uncommon in drug cases for the participants to refer to controlled substances by some euphemistic word or phrase. *See, e.g., In re E.G.*, No. 05-95-00961-CV, 1996 Tex. App. LEXIS 5210 (Tex. App.—Dallas Nov. 26, 1996, no writ) (not designated for publication) (the term "fifties" is a common slang term for cocaine).

Carol testified that when they arrived at Wal-Mart, she had a container of methamphetamine in her hand (the search revealed that in the container was a glass pipe, baggies with trace amounts of methamphetamine, and three bags of methamphetamine). As they were walking into the Wal-Mart store, she told Allen that she left the "green thing" in his car. By that statement, Carol testified she was referring to "dope." Carol further testified that she assumed that her wording was such that Allen would know she placed drugs in the car.

A defendant's knowledge is typically established by circumstantial evidence. *Thomas v. State*, 208 S.W.3d 24, 25 (Tex. App.—Amarillo 2006, no pet.). While there is no direct testimony

11

that Allen knew and understood by Carol's statement that she had placed an illegal controlled substance in his vehicle, we believe, under these facts, a jury could reasonably infer that her statement made him aware of the existence of the drugs in his car. That being the case, Allen had drugs in the vehicle that he controlled and had the time, opportunity, and authority to terminate any possession charged to him, and he failed to do so. While the quantity of facts linking Allen to the drugs are but a few, the logical force of them is substantial. In reviewing the evidence in a light most favorable to the verdict, we agree that a rational jury could have found all elements of this crime, including knowledge of the illegal substance, beyond a reasonable doubt. The evidence is legally sufficient to support the jury's finding.

In considering the factual sufficiency, we are to review the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The primary question in this case is whether Allen had knowledge that his vehicle contained an illegal substance—that evidence has been reviewed in detail. There is no evidence specifically refuting Allen's knowledge of the drugs in his car; we cannot find that a great preponderance of the evidence requires us to determine the jury verdict is clearly wrong or manifestly unjust. The evidence is factually sufficient to uphold the jury verdict that Allen possessed the illegal substance.

### III. Drug-Free Zone

Shipp claims the evidence was legally (point of error 2) and factually (point of error 6) insufficient to support the jury's affirmative finding that he possessed the methamphetamine in a drug-free zone. Specifically, the State alleged Shipp possessed the controlled substance within 1,000 feet of Bonham High School.

Bonham police officer Walker testified he measured from the nearest fixed object to the location of Shipp's car in the Wal-Mart parking lot to the edge of the softball field on the Bonham High School campus. Walker testified the car was parked between a light pole and a rack for shopping carts; he said he measured, using a "rolling wheel," about 816 feet from the light pole to the outfield fence on the school's softball field. He was not able to measure a strict straight line: he had to go over curbs, around some cars, and through ditches. Walker said he maneuvered around these impediments, starting at a line in the parking lot. He said from that line to the outfield fence was 816 feet. He estimated about fifty feet lay between his starting spot and the point where the car was parked.

Allen centers his complaint on the fact that Carol testified she and Butner left the store, then drove the car out of the parking lot, "made the block," re-entered the parking lot, and then parked the car again. Allen claims that because there is no evidence of where he parked the car, as opposed to where Carol and Butner parked, it cannot be known if he, along with the vehicle in which the methamphetamine was found, was ever within the prohibited zone.

13

The State counters this argument with the testimony of Officer Tammy Bohler, who testified that she was not aware of any back entrance to the Wal-Mart parking lot. As far as she knew, one would have to enter the parking lot via one of two entrances, either of which would put the person entering the parking lot "closer to Bonham High School than" when the person entered the parking lot.

No one denies that Carol and Butner left the Wal-Mart store while Allen was still inside. Allen had given Carol the key to the car, and she and Butner left in the vehicle. Officer Bohler observed them in the vehicle as they were re-entering the Wal-Mart parking lot. Allen was not in the vehicle. It is further undisputed that Walker measured the distance from the light pole nearest the car as it was parked when Carol and Butner re-entered and parked the car after moving it from its original location. Walker acknowledged that he was not aware that the car had been moved, could not testify that it was in the same place, and could not testify that the vehicle was within 1,000 feet of the school grounds from the original location where the car was parked.

We have explained in some detail that the evidence was sufficient to allow the jury to infer that Allen was in possession of the drugs in the vehicle *after* he was told in rather vague terms by Carol that she had placed the drugs in the vehicle. Before that time, there is not sufficient evidence that Allen knowingly possessed the drugs. Consequently, at the time Allen drove the vehicle onto the Wal-Mart parking lot, he could not be found to possess the drugs since there is insufficient evidence at that time that he was aware of drugs in his vehicle. The fact Allen drove the vehicle

14

through one of the entrances that is within 1,000 feet of the school grounds, under these circumstances, is irrelevant. Being unaware of the existence of the controlled substance at the time he entered the parking lot, he would not be in possession of the drugs.

There is no evidence of the distance between the school grounds and the site where the vehicle was parked when Allen parked the car and was notified of the existence of the drugs. Neither is there any evidence of the size of the Wal-Mart parking lot nor that all portions of the lot are within 1,000 feet of the school grounds. The fact that the vehicle, after Carol left the parking lot in it and returned, was finally parked at a distance within 1,000 feet from the school grounds does not allow an inference that the car, as originally parked, was within the requisite 1,000 feet. Absent additional facts, the fact-finder could only speculate as to that distance.

Further, after Carol and Butner took exclusive possession and dominion of the vehicle, Allen, although he was the vehicle owner, no longer had control, management, or care over the substance. The only evidence is that Carol bought the drugs and had actual physical possession of them until she placed them in the vehicle. When Carol was approached after re-parking the car, Allen was not present at the vehicle, but was being detained by the police officers elsewhere. He no longer had the ability to care, manage, or control the substance and, therefore, could not jointly possess the substance. The evidence is legally insufficient to uphold the jury verdict that Shipp's possession of an illegal substance occurred within 1,000 feet of a school zone.

15

## IV.    Consecutive or Concurrent Sentences

Shipp's ninth point of error relates to all three convictions.  The trial court, after receiving the jury's punishment assessments, pronounced sentences in each of the three cases:  sixty years for the possession of a controlled substance; twenty-five years for forgery of a government instrument; and twenty years, plus a $10,000.00 fine for forgery of a commercial instrument.  The trial court then ordered the sentences to run concurrently, and remanded Shipp to the custody of the Fannin County Sheriff.  After the trial court pronounced these sentences and ordered them to run concurrently, the State objected.  Citing Section 481.134(h) of the Texas Health and Safety Code, the State claimed that because the jury's verdict included an affirmative finding on the allegation that Shipp possessed a controlled substance within 1,000 feet of a school, the statute precluded the sentence for the possession of controlled substance charge from running concurrently with punishment for a conviction under any other criminal statute.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(h).  In answer to the State's objection, the trial court said:

> You will need to bring case law on that point.  The Court will take that under consideration in the motion for new trial.  And that would be within 30 days['] time, and the Court will still have jurisdiction and can reform a sentence.  But you will need to bring case law to indicate that is your position.
>      I expect [defense counsel] to bring her case law indicating that [Penal Code Section] 3.03 precludes that.  I will be open to either one, whatever the law is indicating.

About five weeks later, at the hearing on Shipp's motion for new trial, the trial court initially concluded that Section 3.03 of the Texas Penal Code controlled and reiterated its pronouncement

16

at sentencing that the sentences run concurrently. However, upon discovering that Section 481.134 of the Texas Health and Safety Code had been enacted later than Section 3.03, the trial court ruled the sentences for the two forgery convictions would run consecutive to the sentence for possession of a controlled substance.

We have found that the evidence is legally insufficient to sustain the jury verdict that Shipp possessed an illegal substance within 1,000 feet of a school zone. As a result, that statute's prohibition against concurrent sentences in inapplicable. The record shows that the trial court changed the sentence based on the provisions of Section 481.134(h) and since we have found that section inapplicable, we will determine if there is any other justification for the imposition of consecutive sentences.

In this case, Shipp was indicted and tried for possession of a controlled substance, forgery of a government document, and forgery of a commercial instrument. The three causes were consolidated and tried together in a single criminal action. *See* TEX. PENAL CODE ANN. § 3.02(a) (Vernon 2003). Each of the offenses occurred within minutes of the other at the Wal-Mart store on August 8, 2007, pursuant to the same transaction and therefore arose out of the same criminal episode. Under these circumstances, the sentences normally would be concurrent. TEX. PENAL CODE ANN. §§ 3.01, 3.03(a) (Vernon Supp. 2008). The trial court originally sentenced Shipp to concurrent sentences, but was later persuaded that the provision in Section 481.134(h) (drug-free

zone) applied and precluded the drug conviction from running concurrently with the other charges.[2] Since we have found Section 481.134(h) does not apply, the sentences were required to run concurrently.

Additionally, the Texas Court of Criminal Appeals has held that the trial court may modify its sentence if the modification is made on the same day as the assessment of the initial sentence and before the court adjourns for the day. *State v. Aguilera*, 165 S.W.3d 695, 698 (Tex. Crim. App. 2005). Here, the sentence was formally imposed May 12, 2008, after which the trial court remanded Shipp into the custody of the sheriff of the county to be held there until he was delivered to the prison. Shipp's sentence began to run on that date. *See* TEX. CODE CRIM. PROC. ANN. art. 42.09, § 1 (Vernon Supp. 2008). The re-sentencing was done more than thirty days later. Based on the precedent of the Texas Court of Criminal Appeals, the trial court was without authority to re-sentence Shipp. The sentence of May 12, 2008, is reinstated and the sentences herein shall run concurrently.

## V.    Due Process

In a supplemental, or tenth point of error, Shipp complains that the trial court violated his due process rights by allowing the State to, first, consolidate three offenses into one trial; then,

---

[2]"Punishment that is increased for a conviction for an offense listed under this section may not run concurrently with punishment for a conviction under any other criminal statute." TEX. HEALTH & SAFETY CODE ANN. § 481.134(h).

18

second, allowing the State to receive the benefit of cumulated sentencing. We overrule this point of error.

Rule 33.1(a) of the Texas Rules of Appellate Procedure requires that to preserve error for review on appeal, the record must show the complaint was made to the trial court by a timely request, objection, or motion that specifically stated the grounds for the ruling sought and that the trial court ruled on the request, objection, or motion, either expressly or implicitly or refused to rule. TEX. R. APP. P. 33.1(a); *see also Cole v. State*, 931 S.W.2d 578, 580 (Tex. App.—Dallas 1995, pet. ref'd). Due process and due course of law complaints also must be preserved for appeal. *See Hull v. State*, 67 S.W.3d 215, 216–18 (Tex. Crim. App. 2002); *Dews v. State*, No. 06-06-00221-CR, 2007 Tex. App. LEXIS 3537 (Tex. App.—Texarkana May 10, 2007, no pet.) (mem. op., not designated for publication); *Marrow v. State*, 169 S.W.3d 328, 330 (Tex. App.—Waco 2005, pet. ref'd). The rationale behind the waiver rule is that such complaint in the trial court gives that court or the opposing party a chance to remedy any perceived error. *See Purtell v. State*, 761 S.W.2d 360, 365 (Tex. Crim. App. 1988). Shipp has not preserved this complaint for our review.

We affirm the judgment of conviction regarding Shipp's possession of a controlled substance. Having found there is no evidence to sustain the finding that possession of a controlled substance occurred within 1,000 feet of a school zone, we vacate that finding. Finally, we modify the judgment

that the forgery of a government instrument sentence will run concurrently with the possession of

controlled substance charge rather than consecutively.[3]


                                        Jack Carter
                                        Justice

Date Submitted:     April 27, 2009
Date Decided:       July 23, 2009

Publish

---

[3]In cause number 06-08-00124-CR, we have reversed and acquitted Shipp on the forgery of a commercial instrument charge.