In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00133-CR

                                                ______________________________

 

 

                                    CORNEL G. WILLIAMS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                          Trial Court
No. 37355-B

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley

                                           Dissenting Opinion by
Chief Justice Morriss








                                                                   O P I N I O N

 

            A
Gregg County jury found Cornel G. Williams guilty of possession of more than
four grams of a controlled substance and assessed an enhanced punishment of
life imprisonment.  He appeals the judgment.

            Williams
challenges the legal and factual sufficiency of the evidence to support his
conviction and the legal sufficiency of the evidence to establish that
punishment was governed by Section 12.42(d) of the Texas Penal Code.  Tex.
Penal Code Ann. § 12.42(d) (Vernon Supp. 2009).  Williams also contends that his trial counsel
rendered ineffective assistance by failing to object to the admission of
evidence concerning Williams’s post-arrest silence and by erroneously arguing
at trial that Williams had been on parole for eleven years when he had, in
fact, been in prison.  This error,
according to Williams, left the jury with the impression that Williams served
only two years of his previous seventy-five-year sentence.  We will overrule his contentions and affirm
the conviction, but reverse the sentence and remand to the trial court for a
new hearing on punishment.

I.          FACTUAL BACKGROUND

            Officer
Brady Welch was observing the activity at a suspected drug house on the night
of August 23, 2008, when he observed a black car drive up to the house.  The driver exited the car, went into the
house, and then left the house after three to five minutes.  Welch followed the black car, witnessed the
driver fail to stop at a stop sign, and initiated a traffic stop.  Officer Kelly Humphrey, in his own patrol
car, joined Welch in the traffic stop.  

            The
driver continued driving for a couple of blocks, then turned left and pulled
over.  As the vehicle turned left,
Humphrey noticed that “a white object” was thrown out of the passenger-side
window of the car.  Humphrey searched the
area and found a baggie containing what he believed to be cocaine.  Humphrey noted that the baggie was dry while
the surroundings were wet from a recent rain. 
The baggie contained a substance that was later tested and identified as
5.82 grams of cocaine base. 

            The
driver was identified as Williams. 
Selena Peacock, a known prostitute, was his only passenger.  Both Williams and Peacock ultimately denied
ownership of the cocaine.  Initially,
Peacock denied ownership, then admitted ownership only to recant and again
maintain that the cocaine did not belong to her.  

II.        ANALYSIS

            A.        Sufficiency of the Evidence

                        1.         Standards
of Review

            In
reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  In a legal sufficiency
review, we must defer to the jury’s ability to resolve conflicts in testimony,
weigh the evidence, and draw reasonable inferences from the evidence.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

            In
contrast to a legal sufficiency review, when conducting a factual sufficiency
review, all evidence is viewed in a neutral light, favoring neither party.  Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We are to determine if the evidence
supporting the verdict, although legally sufficient, is nevertheless so weak
that the verdict is clearly wrong or manifestly unjust or whether the verdict
is against the great weight and preponderance of the conflicting evidence.  Watson,
204 S.W.3d at 414–15.  While a factual
sufficiency review allows a very limited degree of “second-guessing” the jury,
the review should be deferential, maintaining a high level of skepticism about
the jury’s verdict before a reversal can occur. 
Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007); Watson,
204 S.W.3d at 417.

            A
review of both the legal sufficiency and the factual sufficiency of the
evidence should be measured by the elements of the offense as defined by a
hypothetically-correct jury charge.  Grotti v. State, 273 S.W.3d 273 (Tex.
Crim. App. 2008); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Villarreal
v. State, 286 S.W.3d 321 (Tex. Crim. App. 2009); Malik, 953 S.W.2d at 240.

            To
prove Williams guilty of the charged offense, it was the obligation of the
State to prove that: (1) Williams; (2) intentionally or knowingly; (3)
possessed; (4) a controlled substance, cocaine; (5) in an amount of four grams
or more.  See Tex. Health & Safety
Code Ann. § 481.115 (Vernon Supp. 2009).  To establish the possession element, the
State must prove that:  (1) Williams
exercised control, management, custody, or care over the substance, and (2)
Williams knew the matter possessed was contraband.  Tex.
Penal Code Ann. § 1.07(39) (Vernon Supp. 2009); see Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005). 
Williams’s challenge to the sufficiency of the evidence focuses on the
evidence to show that he exercised control, management, or care over the
substance.  

                        2.         Sufficiency
of the Evidence to Show Possession

            The
State was called on to prove that Williams possessed the cocaine.  Whether direct or circumstantial, the
evidence must show that a defendant’s connection to the drug was more than
fortuitous.  Poindexter, 153 S.W.3d at 405–06. 
Some recognized factors which may circumstantially establish the legal
sufficiency of the evidence to prove a knowing “possession” are: 

(1) the defendant’s presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant’s
proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia were present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the
place where the drugs were found was enclosed; (13) whether the defendant was
found with a large amount of cash; and (14) whether the conduct of the
defendant indicated a consciousness of guilt.

 

Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App.
2006).  The court cautioned that such
considerations were just such, “not a litmus test.”  Id.  It is the logical force or the degree to
which the factors, separately or in combination, tend to connect the defendant
to the contraband that is important to our evaluation.  See
id. at 162; Shipp v. State, 292 S.W.3d 251, 257 (Tex. App.—Texarkana 2009, no
pet.).

            Humphrey,
the officer who saw the object being thrown out of the window, conceded that he
did not see who threw the object.  From
his vantage point, Welch did not see the object being thrown at all.  

            It
is also important that the vehicle from which the cocaine was thrown was being
driven by Williams.  Certainly, the
location of the cocaine, inside the car before it was thrown out of the window,
would suggest that Williams as the driver of the car was in close proximity to
the cocaine.  If Williams knew that drugs
were placed in a vehicle under his control while he had sufficient time to
terminate that possession, but he failed to do so, he could be a joint
possessor.  See Shipp, 292 S.W.3d at
257; Castellano v. State, 810 S.W.2d
800, 806 (Tex. App.—Austin 1991, no pet.) (citing United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir.
1988)).

            Although
he perhaps made no determined attempt to flee from Officer Welch, Williams did
make some maneuvers to delay the traffic stop, presumably to provide the
opportunity for either him or the other occupant of the car to throw the
cocaine out of the passenger window.  The
fact that the baggie of illicit drugs remained dry when found, although it was
a rainy night, indicates that the baggie was only recently deposited and that
it was likely the same object observed to have been thrown from Williams’s car.
 So, his left-hand turn and delay in
pulling over could indicate a consciousness of guilt, a factor to be considered
in evaluating the connection between the cocaine and Williams.  Yet another consideration is that shortly
before the traffic stop, Williams had visited a suspected drug house, stayed
there for three to five minutes, and then left the house.

            Viewing
the evidence in the light most favorable to the verdict and giving deference to
the jury’s ability to resolve conflicts in testimony, weigh the evidence, and
draw reasonable inferences from the evidence, we conclude that a rational trier
of fact could have found the element of possession beyond a reasonable
doubt.  See Laster, 275 S.W.3d at
517; Hooper, 214 S.W.3d at 13.  The record does show that Williams ultimately
denied possession and that Humphrey could not identify who threw the cocaine
out of the window.  Also, Welch testified
that there was no other paraphernalia found in the car.  Viewing all the evidence in a neutral light,
however, we cannot say the legally sufficient evidence is so weak that the jury’s
verdict was clearly wrong or manifestly unjust; nor can we say that the verdict
was against the great weight and preponderance of the conflicting
evidence.  See Watson, 204 S.W.3d at
414–15.  We overrule Williams’s first and
second points of error.  

                        3.         Sufficiency
of the Evidence to Prove Prior Convictions

            Williams pled true to the
enhancement paragraphs.  The State
introduced, without objection from Williams, certified copies of two prior
convictions.  Williams points out that
the State’s notice contains no allegations regarding the sequence of the
convictions.  The notice, he argues,
contains no mention of when the offenses occurred or when the convictions
became final.  Williams maintains that he
pled true to the State’s allegations as they are, not pleading to any sequence,
since the State did not include such in its notice.  The evidence then, he argues, failed to
establish the range of punishment.

            The
State has the burden of proof to show that any prior conviction used to enhance
a sentence was final under the law and that the defendant was the person
previously convicted of that offense.  Flowers v. State, 220 S.W.3d 919, 922
(Tex. Crim. App. 2007).  The State’s
obligation in this regard is to make a prima facie showing that the prior
conviction used for enhancement is valid. 
This may be done by introducing the prior judgment and sentence.  The burden then shifts to the defendant to
prove that it is void and unavailable for enhancement.  Johnson
v. State, 583 S.W.2d 399, 403 (Tex. Crim. App. [Panel Op.] 1979).

            If,
however, a defendant pleads “true” to the enhancement paragraph, the State’s
burden of proof is satisfied and a defendant cannot complain on appeal that the
evidence is insufficient to support the enhancements.  See
Wilson v. State, 671 S.W.2d 524, 525
(Tex. Crim. App. 1984); Harvey v. State,
611 S.W.2d 108, 111 (Tex. Crim. App. 1981); Lugo
v. State, 299 S.W.3d 445, 455–56 (Tex. App.—Fort Worth 2009, pet. ref’d); Magic v. State, 217 S.W.3d 66, 70 (Tex.
App.—Houston [1st Dist.] 2006, no pet.); Harrison
v. State, 950 S.W.2d 419, 421 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d).

            Despite
the general rule that a plea of “true” to an enhancement paragraph relieves the
State of its burden to prove a prior conviction alleged for enhancement and
forfeits the defendant’s right to appeal the insufficiency of evidence to prove
the prior conviction, there is an exception when “the record affirmatively
reflects” that the enhancement is itself improper.  See
Ex parte Rich, 194 S.W.3d 508, 513–14
(Tex. Crim. App. 2006).  To illustrate
this exception, we look first to Sanders
v. State, 785 S.W.2d 445 (Tex. App.—San Antonio 1990, no pet.), in which
the San Antonio court held that a prior nonfinal conviction could not be used
to enhance punishment even where the defendant had pled true to the enhancement
paragraph characterizing the prior offense as final.  “[I]n the interest of justice,” the Sanders court set aside the enhanced
punishment and remanded the case to the trial court for the proper assessment
of punishment.  785 S.W.2d at 448.

            In
similar fashion, the Houston Fourteenth court applied this exception to a case
in which one of the convictions was not final in the alleged sequence that would
make the conviction available for enhancement purposes.  Mikel
v. State, 167 S.W.3d 556 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Although Mikel pled “true” at the punishment
hearing, the court concluded that the evidence was legally insufficient to
prove the enhancement allegations and remanded the case for a new punishment
hearing.  Id. at 560.

            The
Texas Court of Criminal Appeals approved application of the Sanders/Mikel exception in Rich,
194 S.W.3d at 513–14.  In Rich, a defendant pled “true” to
enhancement allegations.  Id. at 510.  However, the record established that one of
the convictions used for enhancement had been reduced to a misdemeanor.  Id.
at 511.  Therefore, despite the plea of “true,”
the record established, as a matter of law, that the prior conviction could not
be used for enhancement.  Id. 
The defendant, applying for a writ of habeas corpus, was then able to
challenge the sufficiency of the evidence to support enhancement despite his
plea of “true.”  Id. at 513.  His challenge
was successful.  Id. at 515.  

            Here,
we have an example of the shifting of the burden of proof.  Until the close of the hearing on punishment,
the burden is on the State to show the existence of the prior enhancing
offenses beyond a reasonable doubt.  Cartwright v. State, 833 S.W.2d 134, 135
(Tex. Crim. App. 1992).  As pointed out
previously, once Williams entered his plea of “true” to the convictions upon
which the enhancements were based, the State had met its burden because “generally
a defendant’s plea of true to an enhancement paragraph provides sufficient
evidence to find the paragraph true beyond a reasonable doubt.”  Lugo,
299 S.W.3d at 455 (citing Wilson, 671
S.W.2d at 525).  However, the State
(apparently in an effort to be thorough) introduced certified copies of the two
prior convictions upon which the enhancement relied.  One of those bore the following notation on
the last page of the exhibit:  “Notice of
Appeal:  Given.”  Williams takes the position that the notation
rebuts the position that the record shows that the 1997 conviction for delivery
of a controlled substance was shown to be final and, therefore, the evidence
was legally insufficient to support the enhancement.

            We
review legal insufficiency challenges to issues of enhancement proof by
applying the hypothetically-correct jury charge test mentioned above.  Malik,
953 S.W.2d at 240; Young v. State, 14
S.W.3d 748, 750 (Tex. Crim. App. 2000). 
The applicable repeat offender enhancement statute is Section 12.42(d) of
the Texas Penal Code, which mandates that if a defendant (1) is proven to have
been previously convicted of a felony which is neither a state-jail felony, nor
certain enumerated sexual offenses or offenses against the family, and (2) the
second such felony offense occurred after the first felony offense had become
final, then the punishment options are restricted to either life imprisonment
or a term of not less than twenty-five years or more than ninety-nine years.  Tex.
Penal Code Ann. § 12.42(d). 

            A
prior conviction becomes final for enhancement purposes when the appellate
court issues its mandate affirming the conviction.  Beal v.
State, 91 S.W.3d 794, 795 (Tex. Crim. App. 2002).  In a concurring opinion in Beal, Judge Keller observed regarding
the sufficiency of the proof of prior convictions that “if the State’s proof of
the prior conviction shows on its face that the conviction was appealed, the
State must put on evidence that [the] mandate has issued.”  Id.
at 797 (Keller, J., concurring).  This
position was ratified by the same court in Ex parte
Chandler, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005).

            Fletcher v. State, 214 S.W.3d 5, 8 (Tex.
Crim. App. 2007) is a somewhat similar case.  There is a major difference, however:  in it, Fletcher entered no plea of “true” to
the enhancement convictions.  The State
introduced a penitentiary packet which included a judgment from the conviction
and that same instrumentation reflected that the underlying conviction had been
appealed.  There was no evidence
presented at the trial level to indicate that a mandate had issued after the
appeal.  The court of appeals purported
to take judicial notice of the fact that the mandate had, indeed, issued and affirmed
the judgment of the trial court.  The Texas
Court of Criminal Appeals observed that once the State makes a prima facie
showing of an enhancement conviction and the record is silent concerning any
appeal, it will be presumed to be final. 
It continued, however, to state that if that presumption of finality has
been overcome (as there, where the penitentiary packet showed an appeal had
been prosecuted), then the State must “proceed with proof of finality.”  Id.  Because there was no proof that a mandate had
issued in the appeal, the evidence was legally insufficient to prove the
finality of the conviction upon which the enhancement was based.

            Here,
both the plea of “true” and the documentary evidence before the trial court
showed that there had been a conviction of the nature which would support the
enhancements prescribed by statute. 
However, the documentary evidence revealed that an appeal had been
prosecuted from one of those convictions, yet there was no evidence presented
to show that the conviction had become final. 
As a result, the evidence was not legally sufficient to sustain the
enhancement. 

            Due
to the failure of the State to prove the finality of the conviction upon which
enhancement was based, the proper remedy is to reverse and remand to determine
proper punishment.[1]  Tex. Code
Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2009).

            B.        Ineffective Assistance of Counsel

            Any
allegation of ineffectiveness of counsel must be firmly founded in the
record.  Wallace v. State, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), aff’d, 106 S.W.3d 103 (Tex. Crim. App.
2003); Goodspeed v. State, 187 S.W.3d
390, 392 (Tex. Crim. App. 2005).  An
appellant claiming ineffective assistance bears the burden of proving by a
preponderance of the evidence that counsel was ineffective.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

            We
determine whether Williams’s trial counsel rendered ineffective assistance by
employing the two-pronged test handed down by the United States Supreme
Court.  See Strickland v. Washington,
466 U.S. 668 (1984).  Failure to satisfy
either prong of the Strickland test
is fatal.  Ex parte Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).  Thus, if either prong of the Strickland test fails, we need not
examine the other.  See Strickland, 466 U.S.
at 697.

            First,
Williams must show that trial counsel’s performance fell below an objective
standard of reasonableness when considering prevailing professional norms.  Strickland,
466 U.S. at 687–88.  There is a strong
presumption that counsel’s conduct fell within the wide range of reasonable
professional assistance and that the challenged action could be considered to
have been prompted by sound trial strategy. 
Id. at 689; Ex parte White, 160 S.W.3d 46, 51 (Tex.
Crim. App. 2004).  Therefore, absent
contrary evidence, we will not second-guess trial counsel’s strategy through
hindsight.  See Blott v. State, 588
S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall
v. State, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref’d).

            Here,
since the record is silent as to why trial counsel failed to object to this
testimony, we will assume it was due to any strategic motivation that can be
imagined.  See Mata v. State, 226
S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005,
pet. ref’d).  To meet the second prong of
the Strickland test, Williams must
show that the deficient performance damaged his defense to such a degree that
there is a reasonable probability that the result of the trial would have been
different had it not occurred.  See Strickland,
466 U.S. at 694.  A reasonable
probability “is a probability sufficient to undermine confidence in the
outcome.”  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

                        1.         Failure
to Object to Testimony

            Williams complains of trial counsel’s
failure to object during the following testimony during the State’s redirect
examination of the arresting officer:

            Q.        Officer Welch, when you stopped the
vehicle, how many people were in it?

 

            A.        Two.

 

            Q.        Driver’s seat, passenger seat?

 

            A.        Correct.

 

            Q.        During the search of the vehicle, did
you find anybody hiding in the trunk?

 

            A.        No, sir.

 

            Q.        Anybody hiding in the backseat?

 

            A.        No, sir.

 

            Q.        Glove compartment?

 

            A.        No, sir.

 

            Q.        Two people in the car?

 

            A.        Correct.

 

            Q.        Did you give both of those individuals
an opportunity to make a statement?

 

            A.        I did.

 

            Q.        Did either one of them avail themselves
of that opportunity?

 

            A.        No, sir.

 

            Q.        In fact, both of them denied it; is that
correct?

 

            A.        That’s correct.

 

            Q.        Are you familiar with the individual
known as the crack fairy?

 

            A.        I can’t say that I am.

 

            Q.        So if two people are in the car, and
there’s no crack fairy, it’s reasonable that it’s going to be in one of their
possessions; is that correct?

 

            A.        That’s correct.

 

            Q.        And if both of those individuals deny
knowledge of those drugs, both of them are going to jail; is that correct?

 

            A.        That’s correct.

 

He characterizes the failure as a
failure to object to testimony concerning Williams’s post-arrest silence.

            We
disagree with such characterization as it pertains to this excerpt of
testimony.  In this exchange, the State elicited
testimony from Welch that Williams denied possession of the drugs and failed to
make a statement to the effect that the drugs belonged to his passenger.  Trial counsel neither had a reasonable basis
to lodge an objection to testimony that Williams denied possession of the
cocaine nor would Williams have been served by trial counsel’s objection to the
failure to implicate his passenger; such testimony could be read to support
Williams’s position that he did not know about the cocaine.  Had he stated to the effect that he knew that
the cocaine belonged to his passenger, he would have necessarily admitted that
he knew of its existence in the car, thereby possibly implicating himself.  That said, the cited testimony, arguably,
favors Williams’s defense by showing that he denied possession and did not make
a statement that he knew that the cocaine had come from his automobile.

            Again,
in the absence of direct evidence of counsel’s reasons for the challenged
conduct, an appellate court will assume a strategic motivation if any can be
imagined.  Garcia, 57 S.W.3d at 440.  We
will not conclude the challenged conduct constitutes deficient performance
unless the conduct was so outrageous that no competent attorney would have
engaged in it.  Id.; see Thompson, 9 S.W.3d at 813.

                        2.         Misstatement
of Jail Time Served

            Williams
also complains about the following statement from trial counsel during closing
argument to the jury:  “The only thing a
person really has to live for is some kind of hope that they can change their
life around.  He did for 11 years before
the cocaine got him again.”  More
specifically, Williams complains that his trial counsel’s remarks invited the
following argument from the State:  “If
he’s been out for 11 years, he didn’t serve 2 on a 75-year sentence; not 2
before he got out.  [Defense counsel]
says that [Williams] avoided the habit for 11 years.  Passed parole, passed his drug test.  Where’s that evidence at?”  The State continued in an apparent attempt to
redirect the jury:  “What lawyers say is
not evidence.  And that’s why I’m telling
you, look at those numbers yourself.  I’m
pointing it out to you, but you need to go back there and do the math on your
own.” 

            The
State concedes that trial counsel’s initial argument invites the inference that
he had been out of prison and behaving himself for eleven years.  Indeed, an earlier statement in his argument
suggests that trial counsel was mistaken: 
“What you didn’t hear is that he’s been out for 11 years doing well,
supporting his family, supporting his kids, that he was obviously on parole and
he was passing drug tests.”  Recognizing
the misunderstanding, trial counsel made a record concerning this statement in
which he concedes that the statement was erroneous and took “full
responsibility” for it:

            Q.        [By
Defense Counsel]  And further, for the
purpose of this record, there was confusion between you and I about years spent
in the penitentiary, for years that you were on parole, is that right?

 

            A.        [By
Williams]  Yes, sir.

 

            Q.        And
I indicated to the jury that you were on parole for 11 years; is that right?

 

            A.        Yes,
sir.

 

            Q.        And
in effect, you were in the penitentiary those 11 years?

 

            A.        Yes,
sir, I was.

 

            Q.        So
that was a mistake that I told the jury, and of course, you heard the
prosecutor pick up on and use; is that right?

 

            A.        Yes,
sir.

 

            Q.        And
as your attorney, I’m accepting full responsibility for that mistake; you
understand that?

 

            A.        Yes,
sir, I do.

 

            Consistent
with trial counsel’s own characterization of the statement as “a mistake,” we
can imagine no strategic or tactical motivation that would justify trial counsel’s
suggestion that Williams served only two years of a seventy-five-year
sentence.  We do, though, recognize that
the misstatement about being on parole is not the only import of this argument.  Nor does one necessarily jump to the
conclusion, from that statement, that Williams only served two years on an
earlier seventy-five-year sentence. 
Indeed, his argument, though inaccurate, appears to be an attempt to
garner sympathy from the jury and gain recognition that Williams did stay away
from cocaine for some years, a reasonable strategy at trial.  The State did, however, lead the jury to the
conclusion that if defense counsel’s statement were true, Williams served
minimal time on a rather hefty sentence.   


            While
trial counsel acknowledged his mistake, nothing in the record suggests the jury
considered the mistake in arriving at the sentence.  See
Ross v. State, 133 S.W.3d 618, 624
(Tex. Crim. App. 2004).  To the contrary,
the State, though it did seize on the misstatement initially, pointed out to
the jury that a lawyer’s argument is not evidence and cautioned the jury to examine
the dates on its own.  In light of these
clarifications and the fact that the jury had the proper relevant dates of
convictions, we conclude that the record fails to establish a reasonable
probability that, but for trial counsel’s error, the result of the punishment
proceeding would have been different, and we will not speculate to reach such a
result.  See Stewart v. State, 293
S.W.3d 853, 864 (Tex. App.—Texarkana 2009, pet. ref’d).  We overrule this contention of error.

III.       CONCLUSION

            Having
sustained Williams’s claim regarding the sufficiency of the evidence regarding
the enhancement, but overruling his other points, we affirm the trial court’s
judgment of conviction, but remand to the trial court for a new punishment
hearing. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

 

DISSENTING OPINION

 

            I believe
that the mere notation in the record that a notice of appeal was given, on a
prior conviction used for enhancement purposes, does not affirmatively reflect
that such conviction has not become final. 
Therefore, I would affirm the judgment of the trial court in all
respects.

Despite the general rule that a plea of true to
an enhancement paragraph relieves the State of its burden to prove a prior
conviction alleged for enhancement and forfeits the defendant’s right to appeal
the insufficiency of evidence to prove the prior conviction, there is an
exception when “the record affirmatively reflects” that the enhancement is
itself improper.

 

Ex parte Rich, 194 S.W.3d 508, 513 (Tex.
Crim. App. 2006).  Here, the record
reflected only that a notice of appeal had been given and did not provide any
other information with regard to the subsequent development of that appeal
after the notice of appeal had been given.

            In each of
the cited cases in which enhancements were held improper in spite of a plea of “true”
to the enhancement allegations, the record affirmatively demonstrated, in one
way or another, that the conviction used for enhancement purposes did not
qualify for such use, that is, it was either not a felony, was not properly
sequenced, or was not final.  See id. (prior “felony” conviction
affirmatively shown to have been reduced to misdemeanor); Mikel v. State, 167 S.W.3d 556, 558–59 (Tex. App.—Houston [14th
Dist.] 2005, no pet.) (“later” sequenced prior offense shown on face of record
to have occurred before “earlier” prior offense); Sanders v. State, 785 S.W.2d 445, 448 (Tex. App.—San Antonio 1990,
no pet.) (record affirmatively showed that prior “final” felony was, at time of
enhancement, suspended).

            Here, all
the record shows is that a notice of appeal was given; it says nothing about
what happened after that notice of appeal was given.  Thus, I believe, the record does not “affirmatively
reflect” that the plea of “true” was untrue, and the sentence should stand as
enhanced.

            I
respectfully dissent.

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

 

 

Date Submitted:          February 10, 2010

Date Decided:             March 31, 2010

 

Publish

 











[1]When
a reviewing court determines that the State’s evidence fails to show that an
enhancement allegation is true, the Double Jeopardy Clause does not bar the use
of the enhancement conviction during a retrial on punishment; no harm analysis
is required.  Jordan v. State, 256 S.W.3d 286, 292 n.39 (Tex. Crim. App. 2008) (citing
Monge v. California, 524 U.S. 721,
734 (1998)).